# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DONG SIK YOO | § | |
| | § | |
| | § | Civil Action No. 4:17-CV-00446 |
| v. | § | Judge Mazzant |
| | § | |
| KOOK BIN IM a/k/a BENNY IM and | § | |
| BENNY TAC, INC. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue (Dkt. #11).[1] Having considered the relevant pleadings, the Court finds that Defendants' motion should be denied.

### BACKGROUND

In January 2011, Plaintiff Dong Sik You a/k/a James Yoo ("Yoo") and Defendant Kook Bin Im a/k/a Benny Im ("Benny Im") discussed an investment proposition in Dallas, Texas. In February 2011, Yoo and Benny Im entered into an oral agreement ("AMPM Agreement") to purchase the ARCO AMPM gas station Store No. 83031 located at 3601 Center Street, Tacoma, Washington, 98409 ("AMPM Business"). The seller of the AMPM Business was Harbor Olympic Land 5911 LLC ("Harbor Olympic"). At the time of these discussions, both Yoo and Benny Im were residents of Dallas, Texas.

---

[1] Pursuant to Local Rule CV-7(a), "Each pleading, motion or response to a motion must be filed as a separate document, except for motion s for alternative relief[.]" Defendants filed their Motion to Dismiss and Motion to Vacate Clerk's Entry of Default in a single motion (Dkt. #11). Although the Court should have denied the motion pursuant to the Local Rules, the Court addresses them separately in consideration of judicial economy. In separate Memorandum Opinion and Order issued contemporaneously with this Order, the Court found that Plaintiff's Motion for Default should be denied, and the clerk's entry of default should be vacated.

Under the AMPM Agreement, Yoo agreed to invest $250,000 for the purchase and operation of the AMPM Business and Benny Im agreed to manage the day-to-day operations. Yoo and Benny Im were entitled to equal shares of any profit made from the AMPM Business. Under the AMPM Agreement, Yoo agreed to allow Benny Im to register the AMPM Business in Defendant Benny Tac, Inc.'s ("Benny Tac") name, because Benny Tac was an authorized ARCO AMPM franchisee.

On or about April 2011, James Yoo transferred $250,000 ("2011 Investment") to Harbor Olympic, on behalf of Benny Im to purchase the AMPM Business in Benny Tac's name pursuant to the AMPM Agreement. Soon after, Benny Im moved to Washington and began to manage the day-to-day operations of the AMPM Business. On or about July 2012, Yoo transferred an additional $100,000 ("2012 Investment") to Benny Im to make improvements to the AMPM Business.

On or about September 2013, Benny Im informed Yoo that the AMPM Business was losing money and not marketable. He also advised Yoo that they should terminate the AMPM Business. Soon thereafter, Yoo agreed to let Benny Im and Benny Tac terminate the AMPM Business. At that time, Yoo did not seek compensation for his 2011 Investment and 2012 Investment in the AMPM Business.

On or around November 2016, Yoo discovered through an acquaintance that Benny Im had purchased a night club, The Cuff Complex, located at 1533 13th Avenue, Seattle, Washington 98122, allegedly using the proceeds from the AMPM Business ("The Cuff Complex Agreement"). The Cuff Complex Agreement was finalized on or around July 1, 2015. James Yoo was unaware of The Cuff Complex Agreement and did not receive any interest from The Cuff Complex Agreement.

On June 23, 2017, Plaintiff filed his Complaint against Defendants (Dkt. #1). That same day, Plaintiff filed his Amended Complaint asserting claims for breach of contract, breach of fiduciary duty, fraud, fraud by nondisclosure, conversion, and unjust enrichment (Dkt. #4).

On October 2, 2017, Defendants filed their Motion to Dismiss (Dkt. #11). On October 16, 2017, Plaintiff filed his response (Dkt. #18). On October 23, 2017, Defendants filed their reply (Dkt. #19). Defendants move, in the alternative, for the Court to transfer venue to the Western District of Washington for the convenience of the parties.

**LEGAL STANDARD**

**I.    Motion to Dismiss for Lack of Personal Jurisdiction – 12(b)(2)**

A nonresident defendant's minimum contacts with the forum state can establish either specific jurisdiction or general jurisdiction. Specific jurisdiction exists if the Court determines that (1) the foreign defendant purposely directed his activities at residents of the forum state, and (2) the cause of action arose from or is connected with such activities. *Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). "General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'" *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)).

Specific jurisdiction exists where the plaintiff alleges a cause of action that grows out of or relates to the contacts between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. The Fifth Circuit has concluded that "specific jurisdiction is a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadin v. Gerber*,

587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

The Fifth Circuit follows a three-step analysis in determining whether a court has specific personal jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin*, 587 F.3d at 759 (quoting *Seiferth*, 472 F.3d at 271). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *Id.* (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). Even a single act by a defendant may establish specific jurisdiction if the act in the forum state is substantially related to the suit. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Once a plaintiff establishes that the defendant had minimum contacts with the forum state sufficient to permit specific jurisdiction, the burden shifts to the defendant to prove that the exercise of jurisdiction is not fair or reasonable. *McFadin*, 587 F.3d at 759. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King Corp.*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 760 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

## II. Improper Venue – 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party the ability to move the Court to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3); *see Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008) (citations omitted). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Global Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss it, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . .'" *Van Dusen,* 376 U.S. at 616.

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*.

The party seeking transfer of venue must show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Id.* at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this

privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id*. at 315.

## ANALYSIS

### I. Personal Jurisdiction

Defendants contend that the Court should dismiss this action pursuant Federal Rule of Civil Procedure 12(b)(2) because they are not subject to the Court's jurisdiction. Defendants claim that specific jurisdiction is lacking because Texas's long-arm statute is inapplicable and their contacts with Texas, relating to the transaction at issue, do not rise to the level of minimum contacts.

Plaintiff does not allege that Defendants' contacts with Texas are sufficient to support general jurisdiction here. Thus, the Court need only address whether it has specific jurisdiction over the Defendants. Addressing Defendants' long-arm statute argument first, because the Texas long-arm statute has been interpreted to extend as far as due process permits, the Court limits its inquiry to whether the exercise of personal jurisdiction over the nonresident defendant comports with federal constitutional due process requirements. *See Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003), *cert. denied*, 124 S. Ct. 1085 (2004) (citing cases). Therefore, the Court ultimate inquiry is whether Defendants' contacts with Texas support the exercise of specific jurisdiction.

Benny Im is a Washington resident. Benny Tac is a Washington corporation, with its principle place of business in Tacoma, Washington. It has no offices or employees in Texas and does not do business in Texas. Performance of the contract also occurred outside Texas, since the contract required Benny Im to move to Washington and began to manage the day-to-day operations of the AMPM Business.

However, Defendants' contacts with Texas were not the result of a single, unilateral activity initiated by Plaintiff related to an isolated transaction. Rather, the facts of this case are

7

more akin to those involving sellers who "reach out beyond one state and create continuing relationships and obligations with citizens of another state." *Rudzewicz,* 105 S.Ct. at 2182.

Furthermore, "[f]or a court to exercise 'specific' jurisdiction over a defendant, the cause of action must arise out of the defendant's contacts with the forum." *Luv N' care, Ltd. v. Insta-Mix, Inc.* 438 F.3d 465, 472 (5 Cir. 2006); *In re Norplant Contraceptive Products Liability Litigation*, 886 F.Supp. 586, 590 (E.D. Tex. 1995), citing *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990). During the negotiation of the contract that is the subject of this suit, Plaintiff and Benny Im were both residents of Texas. Benny Im allegedly made false statements during that meeting held in Texas. Plaintiff's breach of contract and related claims certainly arise out of Defendants' contacts in Texas.

These facts, viewed in the light most favorable to Plaintiff, are sufficient to establish a *prima facie* case that Defendants had the requisite minimum contacts with this forum. *See, e.g., FCA Inv. Co. v. Baycorp Holdings, Ltd.,* 48 F. App'x 480, 2002 WL 31049442, at *2 (5th Cir. Aug. 29, 2002) (finding nonresident defendant had sufficient minimum contacts with forum state to support the exercise of personal jurisdiction with respect to fraud claim where representative of defendant placed telephone call to plaintiff in Texas, sent documents to plaintiff in Texas, and attended meeting in Texas); *Lewis v. Frense,* 252 F.3d 352, 358 (5th Cir. 2001) ("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."); *Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 332–33 (5th Cir.1982), *cert. denied,* 460 U.S. 1023 (1983) (holding single telephone call initiated by nonresident defendant sufficient to support the exercise of personal jurisdiction); *TransFirst Holdings, Inc. v. Phillips,* No. 3-06-CV-2303-P, 2007 WL 631276, at *4 (N.D. Tex. Mar.1, 2007) (false representations in legal documents, emails, letters, and phone calls directed towards plaintiff's home office in Texas constituted

sufficient minimum contacts to support the exercise of specific jurisdiction over defendant); *Fowler v. Broussard,* No. 3-00-CV-1878-D, 2001 WL 184237 at *5 (N.D. Tex. Jan. 22, 2001) (misrepresentations to plaintiff in Texas relating to an agreement made the basis of the subject litigation held sufficient to support the exercise of specific jurisdiction over defendant).

Since the Court has concluded that Defendants have sufficient minimum contacts with the State of Texas, the Court must now determine if its assumption of jurisdiction would offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). Where, as here, minimum contacts are established, a nonresident defendant must make a "compelling case" against the exercise of personal jurisdiction. *See Wien Air Alaska,* 195 F.3d at 215 (citing *Rudzewicz,* 105 S. Ct. at 2185). Among the relevant factors to be considered by the court in making this determination are: (1) the burden on the defendant in having to litigate in the forum; (2) the plaintiff's interests in convenient and effective relief; (3) the forum state's interest in the lawsuit; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. *Id.* (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993)).

Defendants have failed to make a "compelling case" against the exercise of personal jurisdiction. Their only arguments are that it would be unduly burdensome for them to litigate the case in Texas. Defendants "should reasonably have foreseen that the harm resulting from fraudulently concealing competitive activity would flow to Texas." *TransFirst Holdings,* 2007 WL 631276, at *6.

Conversely, Plaintiff has "a strong interest in securing convenient and effective relief." *See In re Norplant Contraceptive*, 886 F. Supp. at 591. Defendants purposefully interjected itself into this forum when they allegedly formed the oral contract in Dallas, Texas. The State of Texas has

a strong interest in protecting its residents from alleged contractual breaches of a contract that was formed in Texas. Finally, Texas will provide a convenient forum for the adjudication of this case. The burden of requiring Defendant to litigate in Texas is no greater than the burden of requiring Plaintiff to litigate in Washington. *Id*. As such, the exercise of jurisdiction over Defendants by this Court would not offend traditional notions of fair play and substantial justice. The Court finds that it has personal jurisdiction over Defendant.

**II.     Venue**

Although Defendants filed their motion as a 12(b)(3) motion to dismiss due to improper venue, they do not argue any substantive grounds that venue is improper. They merely argue that the Western District of Washington is a more convenient venue under 28 U.S.C. § 1404. Thus, Defendants have waived their argument that venue is improper.[2]

However, Defendants do move to transfer venue pursuant to 28 U.S.C. § 1404(a), which permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).The first issue that the Court must determine is whether the suit could have been filed originally in the destination venue. *Volkswagen II*, 545 F.3d at 312. Plaintiff does not dispute that the Western District of Washington is a proper venue for this case. As this matter is not in dispute, Defendants meet the threshold inquiry for a transfer of venue analysis.

---

[2]Federal Rule of Civil Procedure 12(h)(1) "advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. If he wishes to raise any of these defenses he must do so at the time he makes his first defensive move." *Golden v. Cox Furniture Mfg. Co. Inc.*, 683 F.2d 115, 118 (5th Cir. 1982). Under Federal Rule of Civil Procedure 12(h)(1), "[a] party waives any defense listed in rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)." FED. R. CIV. P. 12(h)(1)(A). Federal Rule of Civil Procedure 12(g) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2). Accordingly, a party must assert any Rule 12(b)(3) motion that is available at the time it files any Rule 12 motion. *Elbit Sys. Land & C41 Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-37, 2017 WL 2651618, at *20 (E.D. Tex. June 20, 2017) (citing *e.g.*, *Peacock v. Ins. & Bonds Agency of Tex., PLLC*, No. 3:12-CV-1710-D, 2012 WL 3702920, at *1 (N.D. Tex. Aug. 28, 2012)).

**A. Public Interest Factors**

The Fifth Circuit applies four non-exclusive public interest factors in determining a § 1404(a) venue transfer question: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or the application of foreign law.

*(1) The Administrative Difficulties Flowing From Court Congestion*

In considering this factor, the speed with which a case can come to trial and be resolved may be a factor. *See Volkswagen II*, 545 F.3d at 316; *Gates Learjet Corp. v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.")).

The most recent statistics obtained by the Court for the 12-month period ending in September 30, 2017, indicate that the median time from filing to trial in civil cases in the Eastern District of Texas was 23.8 months, as compared to 19.7 months in the Western District of Washington.[3] The median time from filing to disposition in the Eastern District of Texas was 6.9 months and 6.7 months in the Western District of Washington.

This factor is neutral as the case resolution speed of both Western District of Washington and the Eastern District of Texas are similar.

*(2) The Local Interests in Having Localized Interests Decided at Home*

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Jury duty is a burden that ought not to be imposed

---

[3] *See* Federal Court Management Statistics, September 2014,
www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/09/30-1, accessed January 17, 2018.

upon the people of a community which has no relation to the litigation." *Affinity Labs of Tex. v. Samsung Elecs. Co.,* 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (citing *Volkswagen I*, 371 F.3d at 206)).

Defendants argue that this factor weighs in favor of transfer. Defendants are accused of making material representations regarding the termination and ultimate sale of the AMPM Business, and at all times relevant to the Complaint these Defendants lived and worked in the Western District of Washington. Defendants contend that only the alleged oral agreement underlying the lawsuit was agreed to in Dallas, Texas, and the underlying transaction allegedly contemplated the purchase of real property and a business located in the State of Washington. Thus, Defendants assert that Washington fundamentally holds a localized interest in applying its applicable real property and business law and managing the affairs of Washington's businesses.

However, as discussed above, the State of Texas has a strong interest in protecting its residents from alleged contractual breaches of a contract that was formed in Texas. Texas will provide a convenient forum for the adjudication of this case. Therefore, the Court finds that this factor is neutral.

*(3) Familiarity of the Forum with the Governing Law*

Both Plaintiff and Defendants agree that Washington law applies to this case. The Eastern District of Texas is just as adequately equipped to apply Washington law as the Western District of Washington. As such, this factor is neutral.

*(4) The Avoidance of Unnecessary Problems of Conflicts of Law*

The parties have not argued, and the Court is not aware of, any conflicts of law. Therefore, this factor is neutral.

## B. Private Interest Factors

The Fifth Circuit also considers four non-exclusive "private" factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of willing witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315.

### *(1) The Relative Ease of Access to Sources of Proof*

The first private interest factor is the relative ease of access to the sources of proof. *Volkswagen I*, 371 F.3d at 203. "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (citing *Volkswagen II*, 545 F.3d at 316).

Defendants argue that the transaction and related events occurred in Washington. The real property at issue is located in Washington and access to evidence related to the property is located in Washington. Defendants further contend that all other relevant documents can be easily accessed online and printed at any computer terminal. *Id.*

Plaintiff contends the evidence centers around the transfer of $200,000 from Plaintiff to Defendants. Evidence of the transactions are likely to be direct or indirect documentary evidences easily accessible from the Eastern District of Texas. Plaintiff argues that the key evidence center not on a physical review of the real property at issue, but on the paper trail following the $200,000 derived from a Texas account and the documents memorializing the various transactions.

"[T]he location of documents is given little weight in determining proper venue unless the documents 'are so voluminous [that] their transport is a major undertaking.'" *Barnes & Noble Booksellers, Inc. v. DDR DB SA Ventures, LP*, No. SA05CA0002XR, 2005 WL 1279192, at *2

(W.D. Tex. May 5, 2005) (quoting *Gardipee v. Petroleum Helicopters, Inc.*, 49 F. Supp. 2d 925, 931 (E.D. Tex. 1999)). *See Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) ("documents can be produced and examined anywhere for discovery purposes"). It appears that there are a limited number of documents that may be available in the Western District of Washington and there may be a limited number of documents located in the Eastern District of Texas. All other documents are capable of being produced electronically. Therefore, the Court finds that this factor is neutral as to transfer.

*(2) The Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen I*, 371 F.3d at 203. A court cannot compel non-party witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses. FED. R. CIV. P. 45(c)(3)(A)(ii), 45(c)(3)(B)(iii).

Defendants contend that the witnesses to the alleged transfers and purchases of property reside in Washington and are subject to the Western District of Washington's subpoena power. Plaintiff argues that key events and witnesses in the underlying action, including the preparation and the wiring of the $200,000 and those involved in the transaction, lie within close proximity to the Eastern District of Texas.

Defendants have only demonstrated to the Court that granting its motion would serve to transfer the inconvenience from Defendants' witnesses to Plaintiff's witnesses. That is insufficient to shift this factor in favor of the transferee venue. This factor is neutral.

*(3) Cost of Attendance for Willing Witnesses*

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. In *Volkswagen II*, the Fifth Circuit noted that "[a]dditional distance

means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317. The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

As stated above, Defendants have indicated that a significant number of these witnesses to the alleged transfers and purchases of property reside in the Western District of Washington. Plaintiff relies upon the same argument that the key events and witnesses in the underlying action lie within close proximity to the Easter District of Texas.

Transferring this action from the Eastern District of Texas to the Western District of Washington would increase the distance that Plaintiff's witnesses must travel by approximately 2,100 miles. Denying Defendants' motion would require its witnesses in Washington to travel the same 2,100 miles. The burden of requiring Defendant to litigate in Texas is no greater than the burden of requiring Plaintiff to litigate in Washington. Again, Defendants have only demonstrated to the Court that granting its motion would serve to transfer the inconvenience from Defendants' witnesses to Plaintiff's witnesses. This factor is neutral.

*(4) All Other Practical Problems*

Neither party has addressed the fourth factor, nor will the Court.

## CONCLUSION

After considering the factors above, the Court is of the opinion that Defendants have failed to show that transfer to the Western District of Washington is "clearly more convenient" than the current venue. *Volkswagen II*, 545 F.3d at 315.

It is therefore **ORDERED** that Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue (Dkt. #11) is hereby **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 24th day of January, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE